[Civ. No. 6431. Fourth Dist. Aug. 25, 1960.]

In re ELICIA DAWN SYSON et al., Minors. JOHN D. SYSON, Appellant, v. CHARLES T. G. ROGERS, as Chief Probation Officer, etc. et al., Respondents.

Harry Ellman for Appellant.

Henry A. Dietz, County Counsel, Duane J. Carnes and William C. Faulwetter, Deputy County Counsel, and Clyde A. Baugh for Respondents.

SHEPARD, J.—This is an appeal by John D. Syson, father of three minor children, from orders of the Juvenile Court of San Diego County, dated January 12, 1960, by which wardship of the juvenile court over said children, custody in the probation officer, and placement for immediate care in the home of the mother under the supervision of the probation officer, were all continued pending the further order of the court.

It appears that on July 2, 1959, the juvenile court made its judgments by which each of the children was made a ward of the juvenile court, under authority of paragraphs (b) and (d) of section 700, Welfare and Institutions Code, finding that said minors had no parent or guardian capable of or willing to exercise proper parental control and that the minors' home was then an unfit place for said minors, and it appeared that the best interests of said minors would be served by adjudging them wards of the juvenile court. It, by said judgments, assumed wardship in the juvenile court, placed the custody of the children in the probation officer, and directed the probation officer to place them for care in the home of the mother under supervision of said probation officer. Said judgments were clearly sufficient. The fact that the court, in its

findings, placed the primary blame on the mother is a mere descriptive detail and does not vitiate the force of the main findings, nor the judgments. It sufficiently complies with the purpose of section 739, Welfare and Institutions Code.

APPEAL FROM ORDER AFTER JUDGMENT MAY NOT BE USED
TO OBTAIN REVIEW OF ORIGINAL JUDGMENT

 Welfare and Institutions Code, section 580, provides in part as follows:

"Appeal. A judgment or decree of a juvenile court assuming jurisdiction and declaring any person to be a ward of the juvenile court or a person free from the custody and control of his parents may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; . . ."

From the foregoing, it will be seen that special orders after the original judgments are appealable in their own right, and that the judgments were appealable within the time provided by law. The original judgments herein were made on July 2, 1959, and more than six months had passed before the hearing and orders of January 12, 1960, and no appeal was ever taken from said original judgments. The orders of January 12, 1960, are the only orders from which an appeal has been taken. Such an appeal may not be used as an excuse to review errors reviewable on appeal from the original judgments, such as sufficiency of the evidence to support the findings, or sufficiency of the findings to support the judgments. (*Gross* v. *Superior Court,* 42 Cal.2d 816, 821 [4] [270 P.2d 1025]; *Litvinuk* v. *Litvinuk,* 27 Cal.2d 38, 44 [7] [162 P.2d 8]; *Hamasaki* v. *Flotho,* 39 Cal.2d 602, 608 [6-7] [248 P.2d 910]; *Cross* v. *Mayo,* 167 Cal. 594, 597 [140 P. 283]; *Rastelli* v. *Zaca Mining Corp.,* 52 Cal.App.2d 507, 511 [2] [126 P.2d 368].)

The cause with which we are here concerned is the orders of January 12, 1960. The hearing of January 12, 1960, was not for the purpose of reviewing the correctness or validity of the judgments of July 2, 1959, but rather to review the events transpiring thereafter and until January 12, 1960, for the purpose of determining whether or not such events made some new or changed disposition desirable or necessary for the continued welfare of the children. The words of the orders of January 12, 1960, saying that "all prior orders herein not in conflict herewith remain in force and effect," do not constitute a change in the judgments of July 2, 1959. The real and only effect of the quoted words is that the review of

the events occurring during the intervening period between July 2, 1959, and January 12, 1960, convinced the trial court that the *present* best interests of the children do not require any change in the judgments of July 2, 1959. We are satisfied that the events and matters which were properly reviewable on the appeal from the judgments of July 2, 1959, cannot be called up for review in the guise of an appeal from the orders of January 12, 1960. Thus, the evidence and findings supporting the judgments of July 2, 1959, could not be the subject of review on the present appeal.

### The Evidence Was Sufficient

The facts appearing to the court as of January 12, 1960, are as follows: The matter was called for hearing to review the events transpiring after July 2, 1959, up to the date of the new hearing in order to determine whether or not the original judgments for wardship still continued to be necessary, and whether or not some change therein might be desirable for the welfare of the children. Both the mother and the father were represented by counsel, and appellant personally participated. A divorce proceeding had been commenced between the mother and the father on March 5, 1959, and temporary custody pendente lite was at that time given to the mother. On December 11, 1959, this action was tried and judgment was ordered for the father. The evidence does not show that the trial court made any change in its pendente lite order awarding custody to the mother, nor whether or not any final judgment has yet been entered. After the hearing of July 2, 1959, it appears that the mother, under the supervision and guidance of the probation officer, removed herself and the children from the locality and the surroundings in the city of San Diego where her neglect of the children had crystallized the original action of the probation officer. She went to another community within San Diego County; she there obtained employment to supplement the support contributions being made by the father; she secured the assistance of her sister in the care of her children while away at work; and she properly and adequately cared for the children. The father admitted his visitations with the children were generally satisfactory with some minor exceptions. The father does not profess to be able to personally care for the children, but proposed a plan whereby they would be placed in the home of his sister. The probation officer had investigated the home of the father's sister, and recommended against placement there because of

the sister's large family obligations already existent. The court, in accord with recommendations of the probation officer, found that the best interests of the children required continuance of the wardship. The evidence was sufficient to support the court's orders and finding. If the decision of the trial court is supported by substantial evidence, it is binding on the appellate court. (*In re Ayers*, 116 Cal.App.2d 55, 58 [3-5] [253 P.2d 65].)

### JUVENILE COURT WARDSHIP IS NOT AN ADVERSARY PROCEEDING BETWEEN MOTHER AND FATHER

Appellant contends that the mother is being permitted to benefit by her own improper conduct. This proceeding is for the welfare of the children alone, and is not an adversary proceeding between the mother and the father. It constitutes, rather, an acknowledgment and acceptance by the state of its duty under the doctrine of *parens patriae* to protect the welfare of minor children, citizens of the state, to the end that they may have adequate health safeguards, training in morality and general character, and in order that they may grow to maturity with that stability of character, nervous temperament and sound philosophy so necessary to make them useful members of society, and to afford them a reasonable opportunity for happiness. This obligation of the state is not peculiar to present-day society. It has been recognized in the ancient codes of Hammurabi, Justinian, and the common law. It was recognized in the courts of California from the earliest times and has been given effect by the judicial department of this state and of the United States wherever legislative enactment authorized and the facts under such legislation warranted. A few of the many examples are *Ex Parte Ah Peen*, 51 Cal. 280; *Nicholl* v. *Koster*, 157 Cal. 416, 419 [108 P. 302]; *In re Daedler*, 194 Cal. 320 [228 P. 467]; *In re O'Day*, 83 Cal. App.2d 339 [189 P.2d 525]; *May* v. *Anderson*, 345 U.S. 528 [73 S.Ct. 840, 97 L.Ed. 1221].

If the mother has accomplished rehabilitation as an incident of the wardship and the resultant discipline placed upon her by the court and the supervision of the probation officer, such rehabilitation must inevitably redound to the welfare of the children, which welfare is the real object of the wardship. Such incidental benefit to the mother cannot therefore be used to detract from the propriety of the wardship. The children were not placed with the mother for her benefit at all, but solely for the welfare and benefit of the children.

Appellant has cited numerous authorities which we need not here review because none of them in any way closely resemble the facts and procedure involved in the case at bar.

## EXCLUSIVE JURISDICTION IN JUVENILE COURT

Once having attained wardship, the juvenile court continues to retain exclusive jurisdiction within the defined limitation of its powers. But this jurisdiction is always on a temporary basis. Any day that the juvenile court becomes convinced on evidence properly before it that the protection of the children no longer requires wardship, it will be the duty of the juvenile court to dismiss all wardship proceedings. It is clear from reading the discussions of both counsel and the court that on January 12, 1960, the court was not convinced that it yet had had sufficient experience with the parents to be able to say affirmatively that wardship was no longer necessary. The moment the juvenile court does release wardship, the children pass completely from the mandatory jurisdiction of the juvenile court, and the jurisdiction of other courts, including the superior court in the divorce action, is available.

While the juvenile court, on adequate facts, retains jurisdiction and stays within the bounds of its legal power, no other court has the right to interfere with its supervision, for the state, of the children involved. (*People* v. *Sanchez,* 21 Cal. 2d 466, 471 [4] [132 P.2d 810].)

The orders appealed from are affirmed.

Griffin, P. J., and Coughlin, J., concurred.