[No. D018703. Fourth Dist., Div. One. Apr. 29, 1994.]

In re RICHARD C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RICHARD C., Defendant and Appellant.

**[Opinion certified for partial publication.¹]**

¹Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Lynne G. McGinnis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney Genral, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Holley A. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**FROEHLICH, J.**—Pursuant to Welfare and Institutions Code section 707,[2] a minor 16 years of age or older may be determined unfit for treatment by the juvenile court and thereby relegated to disposition as an adult. In certain contexts prior cases have determined that once the juvenile court finds a minor unfit, it loses jurisdiction to process pending or future section 602 petitions. In this case we must determine whether this prohibition extends to a situation in which the finding of unfitness was made in a proceeding where the petition was later dismissed. We conclude it does not. We also conclude the juvenile court did not abuse its discretion in sentencing this defendant, Richard C., to 240 days in a juvenile ranch facility. Accordingly, we affirm.

### Factual and Procedural Background

In separate incidents in October and November 1988, Richard was found in possession of marijuana and rock cocaine. As a result, a section 602 petition was sustained and he was placed on probation. In June 1989 a second petition was sustained arising out of allegations of weapons possession, curfew violation, associating with known gang members and wearing gang colors. After completion of certain diagnostic studies, Richard was placed in a 14-month VisionQuest wilderness program, which he successfully completed in March 1991. One month later a third petition was filed alleging various probation violations. Based on Richard's admission of one violation, the petition was sustained in May. He was ordered to participate in a juvenile court work project and comply with the terms of his probation.

In June 1992 a fourth petition was filed charging Richard with three counts of rape in concert involving a single victim. (Pen. Code, §§ 261, subd. (a)(2) and 264.1.) Two other counts alleged relatively minor violations of the terms of his probation. He was found unfit for treatment as a juvenile and was tried in adult court. The jury deadlocked and all charges were dismissed.

In March 1993 a fifth petition was filed alleging probation violations including repeated unexcused absences from school and testing positive for marijuana usage. Richard unsuccessfully challenged the jurisdiction of the juvenile court based on the prior finding of unfitness. He then admitted the two counts noted above and the petition was sustained on that basis. The court committed him to a period of 240 days in a juvenile ranch facility.

---

[2]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

Discussion

### I. *Jurisdiction of the Juvenile Court*

In a series of cases over the past 17 years, the Courts of Appeal have been required to define the extent to which the juvenile court may exercise jurisdiction over a minor between the ages of 16 and 18 at or following a point when the minor is declared unfit for treatment by the juvenile court as to one of several sets of charges. As a general proposition, these cases suggest that a minor treated as an adult for some purposes must be treated as an adult for all.

The first case to consider the issue, *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463], involved successive section 602 petitions filed against the minor. After the first petition was sustained but before disposition, a second was filed as to which the minor was found to be unfit for treatment by the juvenile court. The minor pleaded guilty to one count of robbery in adult court and was placed on probation including one year in county jail. The juvenile court then entered a dispositional order as to the first petition committing the minor to the California Youth Authority at such time as he was released from county jail. The court in *Dennis J.* held that because the juvenile court and adult court could not exercise concurrent jurisdiction, the juvenile court had no authority to enter a dispositional order: "In exercising its jurisdiction the juvenile court cannot treat and rehabilitate a part of the minor while leaving another part to the rehabilitation processes of the regular criminal justice system. Either the juvenile court or the adult criminal court must deal with the whole individual." (72 Cal.App.3d at p. 760.)

A similar conclusion was reached by the court in *People* v. *Superior Court (Woodfin)* (1982) 129 Cal.App.3d 970 [182 Cal.Rptr. 787]. In *Woodfin*, four successive petitions were filed against a minor all arising out of a single crime "spree" which occurred over a period of 10 days. He was found fit for treatment as a juvenile as to the first three petitions but unfit as to the fourth. Relying on *Dennis J.*, the court held that the juvenile court was precluded from proceeding to adjudicate the first three petitions and was compelled to vacate its findings of fitness and to enter an order finding the minor unfit. (129 Cal.App.3d at p. 976.)

Finally in the case of *In re Shanea J.* (1984) 150 Cal.App.3d 831 [198 Cal.Rptr. 228], three successive petitions were filed against a minor. He was found unfit to be treated as a juvenile as to the first and third petitions. At

least as to the first petition the minor was tried and convicted as an adult.[3] As to the second petition, the People did not request a finding of unfitness and the matter was adjudicated in the juvenile court. The Court of Appeal reversed the judgment in the juvenile court case, concluding that *Dennis J.* precluded both courts from exercising concurrent jurisdiction over the minor. (150 Cal.App.3d at pp. 839-840.)[4]

Another line of cases has limited the implications of *Dennis J.* and its progeny. Several decisions have confronted the fact pattern where a defendant commits a crime after attaining the age of 18 and has a pending juvenile petition arising out of conduct which occurred before his or her 18th birthday. In each of these cases the courts rejected a defendant's argument that the juvenile court has no jurisdiction to adjudicate the juvenile petition, necessarily disputing the notion that juvenile and adult courts can never exercise concurrent jurisdiction over an individual. (See *In re Mikeal D.* (1983) 141 Cal.App.3d 710, 716-718 [190 Cal.Rptr. 602]; *In re Donald B.* (1979) 89 Cal.App.3d 804, 806-808 [152 Cal.Rptr. 868]; *In re Larry T.* (1978) 77 Cal.App.3d 969, 972-974 [144 Cal.Rptr. 43].) *Dennis J.* was distinguished on the ground that the jurisdiction of the adult court was premised on a finding of unfitness rather than merely the age of the defendant. (*Mikeal D., supra,* 141 Cal.App.3d at p. 717; *Donald B., supra,* 89 Cal.App.3d at p. 806; *Larry T., supra,* 77 Cal.App.3d at p. 972.)[5]

---

[3]The record did not reflect the disposition of the third set of charges, and the court assumed the minor was awaiting trial. (150 Cal.App.3d at p. 836 and fn. 3.)

[4]In *Joey W.* v. *Superior Court* (1992) 7 Cal.App.4th 1167 [9 Cal.Rptr.2d 486], this court considered the situation of an individual recently turned 18 who was subject to a section 602 petition arising from conduct which occurred while the person was 17. We held that while such an adult must be given the opportunity to seek a finding of unfitness so that the matter may be adjudicated in adult rather than juvenile court, the court was not compelled to grant the motion. In explaining our rationale for this latter conclusion, we cited the *Dennis J.* line of cases and noted that "[a] finding of unfitness *in a case where the juvenile court has other matters pending* could deprive the court of its *existing jurisdiction* to the extreme detriment of both the court and the People." (7 Cal.App.4th at p. 1175, italics added.) In this case, at the time Richard was found unfit as to the fourth petition, the juvenile court was exercising jurisdiction over him in the sense of probation supervision, but there were no unadjudicated petitions pending.

[5]A limitation of a different sort was recognized in *In re James G.* (1985) 165 Cal.App.3d 462 [211 Cal.Rptr. 611], which like the *Larry T.* line of cases also involved crimes committed by a defendant before and after a statutorily significant birthday. In *James G.*, however, the first offense was committed before the minor turned 16 and the second after. As to the second petition, the minor was found unfit and tried in adult court. He then challenged the jurisdiction of the juvenile court to adjudicate the first petition, but his argument was rejected at both the trial and appellate levels. Distinguishing the facts of *Dennis J.* but not necessarily its rationale, the Court of Appeal in *James G.* found it significant that the offenses in the first petition were allegedly committed while the minor was 15 and could not be adjudicated other than in the juvenile court. (165 Cal.App.3d at pp. 468-469.)

From this melange of decisions we infer that the results in *Dennis J.* and its progeny have less to do with a jurisdictional separation of the juvenile and adult courts and more to do with the fact that a finding of unfitness may simply be inconsistent with continued juvenile court jurisdiction. In line with this conclusion, it would appear that the *Dennis J.* line of cases continues to stand for at least two propositions. First, a finding of unfitness followed by a criminal conviction in adult court will deprive the juvenile court of jurisdiction to adjudicate pending and future petitions at least for as long as the adult court continues to exercise jurisdiction.[6] This is the holding of *Dennis J.* itself. Second, a finding of unfitness in a pending case deprives the juvenile court of jurisdiction to adjudicate other pending cases. This seems to be the extension of *Dennis J.* recognized in *People* v. *Superior Court (Woodfin)* and *Shanea J.*

Neither of these two propositions controls the decision in this case or suggests the juvenile court was without jurisdiction to adjudicate the fifth petition filed against Richard.[7] Rather, we conclude that where a finding of unfitness is based on and assumes the truth of the charges against the minor, an acquittal or other dismissal of the charges terminates the jurisdiction of the adult court and reestablishes jurisdiction in the juvenile court to the same extent it existed before the finding of unfitness. Under such circumstances the prior finding of unfitness is no longer inconsistent with juvenile court jurisdiction.[8]

---

[6]In *In re Shanea J., supra,* 150 Cal.App.3d at page 838, the court stated: "We do not foreclose completely the possibility a juvenile could be found unfit on one occasion and then a considerable period later be found suitable for juvenile proceedings. However, that conclusion would have to be based on an express finding the juvenile had evolved psychologically into a person now amenable to treatment by the facilities available to juvenile court."

[7]The facts underlying *People* v. *Superior Court (Arthur R.)* (1988) 199 Cal.App.3d 494 [244 Cal.Rptr. 841] are similar to those of this case, but the issue actually addressed by the court is quite different, rendering the decision of little assistance. The question presented in *Arthur R.* was whether the People could seek writ review of a juvenile court's decision to terminate its dispositional jurisdiction following a finding of unfitness as to a successive petition. This turned on whether the juvenile court's action could properly be termed "in excess of jurisdiction." The Court of Appeal in *Arthur R.* concluded it could not and writ review was therefore inappropriate. (*Id.* at p. 504.) Clearly there is a substantial difference between whether a juvenile court is permitted to terminate its jurisdiction based on a later finding of unfitness and whether it is compelled to do so.

[8]At oral argument counsel for appellant contended it was error for the juvenile court automatically to reassume jurisdiction over the juvenile after dismissal of the charge which resulted in the finding of unfitness for juvenile jurisdiction. Contending that the ruling on a section 707 motion usually is, as was the situation here, based on a number of circumstances, only one of which is the pending serious criminal charge, counsel suggests that a new hearing under section 707 should be held before jurisdiction is reasserted (termed by some a "reverse 707" hearing). The argument is that trial counsel did all that could have been done for the juvenile in this case by objecting to the jurisdiction of the court, since section 707 provides

In this case the juvenile court expressly found that its previous determination of unfitness was made "in light of the nature of [the] charges" in the fourth petition. Accordingly, that court did not err in denying Richard's motion to dismiss for lack of jurisdiction.

II. *Nature of the Disposition Ordered**

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Judgment affirmed.

Todd, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 28, 1994.

---

for a fitness hearing only upon the petition of the prosecuting attorney (see *In re Anna S.* (1979) 99 Cal.App.3d 869, 872 [160 Cal.Rptr. 495]). While a person achieving the adult status of 18 years of age has standing to file a petition under section 707 (see *Joey W.* v. *Superior Court, supra*, 7 Cal.App.4th at p. 1174), there is no clear authority for one under the age of 18 initiating a petition. Since the court may entertain such a petition on its own motion (*Green* v. *Municipal Court* (1976) 67 Cal.App.3d 794, 803 [136 Cal.Rptr. 710]) we see no practical, jurisdictional or political reason why a request for reconsideration of amenability to juvenile proceedings should not be raised by the juvenile who seeks the opportunity of being tried at the adult level. We have no occasion in this case, however, to rule on that issue, and suggest that the advisability of a "reverse 707" proceeding is a matter that rests with the Legislature.

*See footnote 1, *ante*, page 966.